IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON



ENTERED
SEP - 8 2005
TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

JOHN D. SWIMM,

    Plaintiff,

v.                                     Civil Action No. 3:04-0665

JO ANNE B. BARNHART,
Commissioner of
Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff John D. Swimm appeals the Social Security Commissioner's (hereinafter "Commissioner") final decision denying his applications for disability insurance benefits (hereinafter "DIB") and supplemental security income (hereinafter "SSI") based on disability, brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

I

Plaintiff protectively filed his applications for SSI and DIB on August 1, 2002, alleging disability commencing October 1, 1999, as a consequence of two slipped discs and an ulcer.[1] Both applications were denied initially and again upon reconsideration. At plaintiff's request,

---

[1] Plaintiff's insured status expired June 30, 2000, and for purposes of his DIB application, it is incumbent upon him to establish disability on or before that date. *Harrah v. Richardson*, 446 F.2d 1, 2 (4th Cir. 1971). Plaintiff's insured status does not affect his eligibility for SSI benefits.

administrative hearings were held on October 10, 2003 and January 7, 2004. On March 23, 2004, an administrative law judge (hereinafter "ALJ") found that the plaintiff was not disabled, and that decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review. Thereafter, the plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the ALJ's decision, the plaintiff was forty-three years of age, had obtained a ninth-grade education and had worked as a truck driver, construction laborer, carpenter and material handler. In his decision, the ALJ determined from the objective medical evidence that the plaintiff suffered from the following "severe" impairments[2] as defined by the social security regulations: "degenerative disc disease of the cervical spine and lumbar spine, status post anterior discectomy and fusion at C5-C6, C6-C7." (R. 15.) He did not, however, find that the plaintiff's peptic ulcer disease was a severe impairment and that he did not have an impairment or impairments which in combination met or equaled any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.[3] He further determined that the plaintiff had the following residual functional capacity (hereinafter "RFC"):

> The claimant has degenerative disc disease of the cervical and lumbar spine, status post fusion, however, he retains the residual functional capacity to perform light exertional work; stand/walk 6 hours, but not for prolonged periods of time; sit 6 hours; only occasionally push and/or pull or use hand controls with the upper extremity; only occasional climbing of ramps/stairs; never climb ladders/ropes/scaffolds; only occasional stooping, kneeling or crouching; occasional reaching overhead; no constant forceful turning of the head from side

---

[2] A medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activity. 20 C.F.R. §§ 404.1521(a), 416.921(a).

[3] 20 C.F.R. Pt. 404, Subpt. P., App. 1.

law. *Coffman*, 829 F.2d at 517.

According to the Act, an individual is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.A. §§ 423(d)(1)(A), 1382c(a)(3)(A) (West Supp. 2000). The Commissioner has developed a five-step procedure for making this determination. The first step requires consideration of whether the claimant is engaged in substantial gainful activity. If so, the claimant is found not disabled. If not, the second step requires a finding of whether there is a "severe" impairment. If not, the claimant is found not disabled. If so, the third step calls for an analysis of whether the impairment(s) meets or equals one contained in the listing of impairments.[5] If so, the claimant is found disabled without further analysis. If not, the process continues to the fourth step where it is determined whether the claimant's impairment(s) prevents the performance of his or her past relevant work. If not, the claimant is found not disabled. If so, the burden of production shifts to the Commissioner for the final step.[6] In the fifth step, the Commissioner must demonstrate that the claimant can do other work. If the Commissioner satisfies this burden, benefits are denied. Otherwise, the claimant is found disabled, and benefits are awarded. 20 C.F.R. §§ 404.1520, 416.920.

In the case *sub judice*, both parties agree that the plaintiff has not engaged in any substantial gainful activity since the alleged onset date of disability; he has severe impairments;

---

[5] 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[6] *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

he does not have an impairment or combination of impairments that satisfies a listing in Appendix 1, Subpart P, Regulations No. 4; and, he is unable to perform his past relevant work. They disagree, however, on whether his impairments prevent him from performing any work. Hence, the plaintiff has appealed to this Court and seeks to have the Commissioner's decision reversed.

### III

Plaintiff has submitted two grounds in support of his motion for judgment on the pleadings. He alleges that his limited education makes rehabilitation highly unlikely and that the ALJ's findings concerning his pain and credibility are not supported by substantial evidence. The Commissioner, on the other hand, contends that the ALJ's decision is supported by substantial evidence and adheres to the law. The Court will address plaintiff's grounds for judgment on the pleadings seriatim.

### A

Starting with the issue of his education, the plaintiff argues that his education falls into the limited category, making rehabilitation highly unlikely. As the plaintiff has failed to cite any authority supporting his assertion that a limited education makes rehabilitation highly unlikely, the Court finds it unnecessary to consider it. In this case the ALJ properly determined that plaintiff's ninth-grade education was "limited" under the regulations.[7] He also included it in the hypothetical questions he posed to the vocational expert and considered it when he used the medical-vocation guidelines as a framework for his decision.[8] Finding no error in this aspect of

---

[7] *See* 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3) (2002).

[8] *See* Rule 202.18 of 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 2, Reg. No. 4.

the ALJ's decision, the Court rejects this argument.

**B**

Next, the plaintiff argues that substantial evidence does not support the ALJ's findings concerning his credibility and pain. Specifically, he points to an MRI report as supporting his testimony that he suffers from disabling pain.

The Fourth Circuit has developed the following standard for determining whether an individual's pain is disabling. "[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996). Thus, in order for a "disability to be found, an underlying medically determinable impairment resulting from some demonstrable abnormality must be established." *Id.* at 592. Furthermore, "allegations of pain and other subjective symptoms, without more, are insufficient." *Id.* "Pain is not disabling *per se*, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." *Id.* (quoting *Parris v. Heckler*, 733 F.2d 324, 327 (4th Cir. 1984); *see also* 20 C.F.R. §§ 404.1528(a), 416.928(a) (stating that a claimant's "statements . . . alone . . . are not enough to establish that there is a physical or mental impairment").

In assessing credibility, it is the ALJ's responsibility, not the court's, to weigh and resolve conflicts in the evidence. Courts are not allowed to substitute their judgment for that of the ALJ, provided that substantial evidence supports the decision. *Hays*, 907 F.2d at 1456. *See also Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) (recognizing that the ALJ's assessment of claimant's pain level is entitled to great weight); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th

Cir. 1985) (*per curiam*) (stating that the ALJ has a duty of explanation when making determinations about the credibility of a claimant's testimony).

The record contains the following medical evidence: On June 8, 2002, the plaintiff sought medical treatment at Cabell Huntington Hospital's emergency room for neck and shoulder pain. Upon examination, Dr. Patterson found that the plaintiff had normal range of motion with pain on flexion and extension. A MRI of the cervical spine showed normal alignment with disc space loss at C5-6. Dr. Patterson's impression was cervical arthritis, and he prescribed Celebrex and Flexril upon plaintiff's discharge.

On August 8, 2002, the plaintiff underwent an MRI of his cervical spine. He was admitted to St. Mary's Hospital on August 9, 2002. Upon examination, Mehiar El-Hamdani, M.D. found the following regarding his neck: "Negative carotid bruits. Negative JVD. Negative thyromegaly. There is limitation on range of motion on lateral flexion and extension secondary to pain. Positive tenderness on palpation of cervical spine." (R. 161.) Neurologically, Dr. El-Hamdani found the following: "No focal deficits noted. Strength 5/5 in all extremities. Good tone. Deep tendon reflexes +2 in all four extremities. Sensation intact to light touch on neck, upper extremities, lower extremities, and back. Babinski downgoing." (R. 161.) On June 10, 2002, Panos Ignatiadis, M.D. examined the plaintiff. Dr. Ignatiadis reported that his MRI "showed a disc herniation at C5-C6, C6-C7 with compression of the spinal canal." (R. 151.) Dr. Ignatiadis recommended that the plaintiff undergo an anterior discectomy and that he could "easily be discharged." (R. 151.) The plaintiff was discharged from St. Mary's Hospital on August 10, 2002 and was prescribed Lortab.

On April 24, 2003, the plaintiff was admitted to St. Mary's Hospital for an anterior

discectomy and fusion. Dr. Ignatiadis performed the surgery. On May 23, 2003, the plaintiff followed up with Dr. Ignatiadis. Dr. Ignatiadis reported the following:

> He is one month postop. He still has severe pain in his neck he says, and pain in his lower back which is unrelated to his neck of course. He had a successful anterior diskectomy on April 24. I think he is sensitive to pain. He is taking medication. I explained to him that eventually he will reqire a decrease of his medication, and he agreed.

(R. 207.) On July 7, 2003, the plaintiff returned to Dr. Ignatiadis. Dr. Ignatiadis reported the following:

> Mr. Swimm returns today. He has pain from the top of his head to the bottom of his feet. His neurological examination is satisfactory. He had a fusion about three months ago. I dropped to Lortab 7.5 mg. He is to have an MRI of his lumbar spine and physical therapy to his neck. I put him on Bextra and reassured him. I will see him back in due course.

(R. 206.)

On July 25, 2003, the plaintiff underwent an MRI of his lumbar spine. Rodger Blake, M.D. reported that the MRI revealed stenosis (narrowing) of the spinal canal at L3-4 and L4-5. There was, however, no nerve impingement identified at either level.

On August 18, 2003, the plaintiff returned to Dr. Ignatiadis. Dr. Ignatiadis reported the following:

> Mr. Swimm returnds today. He is two years with back pain. He has evidence of stenosis. There is no disc herniation. He has had no therapy.
>
> I advised him to have physical therapy to his back. He is to continue on Lortab 7.5 and then I will drop it to 5. He si to continue with Bextra. I will see him back in 4 or 5 weeks.

(R. 205.)

As the plaintiff has had surgery on his cervical spine, and as the July 2003 MRI revealed

stenosis in his lumbar spine, the Court holds that the plaintiff has satisfied the first part of the *Craig* analysis. The second part of the *Craig* analysis, however, requires a determination of whether the medical condition causes the degree of limitation, as alleged by the plaintiff. Dr. Ignatiadis's progress notes indicate that plaintiff's neck surgery was successful and that plaintiff appeared to be sensitive to pain. The MRI of plaintiff's lumbar spine revealed no nerve impingement. The notes also reflect that Dr. Ignatiadis had recommended physical therapy and was planning to gradually reduce his pain medication. There is nothing in the notes indicating that Dr. Ignatiadis had restricted plaintiff's activities. In addition, the Court notes that the plaintiff is able to move around and go places as reflected in the activities of daily living questionnaire and the notes from the State Agency. Thus, it appears from the objective medical evidence in the record that plaintiff's cervical pain was improving. With regard to his lumbar pain, the objective medical evidence does not show the existence of a medical impairment which could reasonably be expected to produce disabling pain. As the medical evidence does not corroborate plaintiff's claims, in the amount and degree, alleged by him, the Court holds that substantial evidence supports the ALJ's finding that he is not disabled due to pain. The Court further holds that because the medical evidence is inconsistent with plaintiff's testimony substantial evidence supports the ALJ's finding concerning his credibility. *See Craig*, 76 F.3d at 591 and *Hays*, 907 F.2d at 1456. Finally, the Court notes that the ALJ did not ignore plaintiff's allegations of pain because the ALJ did restrict him to light work.

## IV

On the basis of the foregoing, it is **ORDERED** that the plaintiff's motion for judgment on the pleadings be **DENIED**, that the Commissioner's motion for judgment on the pleadings be

granted and the Commissioner's decision be **AFFIRMED**. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to mail a copy of this Memorandum Opinion and Order to all counsel of record.

ENTER:

_____
ROBERT J. STAKER
Senior United States District Judge